Council, we have 416-0882, the people of the state of Illinois v. Schoonover, on behalf of the appellant, Mr. Matthew, and for the appellee, Mr. McNeil. Mr. Matthew. May it please the court. I'm Akshay Matthew with the Office of the State Appellate Defender, and I represent Hayes Schoonover in this appeal. The right to a public trial is a fundamental element of the American judicial system, and this right is guaranteed by two different provisions of the Bill of Rights. It is a right not only held by the accused, but also the public. It is a default position of the United States Constitution that any member of the public is free to attend any trial proceedings. The U.S. Supreme Court, however, has recognized that in certain rare circumstances that the right to a public trial may have to give way to other important rights or interests. Limiting public access to trials, however, is the exception and not the rule, and trial courts must take special care to balance the interests at stake. Section 115.11, which is at issue in this appeal, presents one such statutory exception to the constitutional requirements of a public trial. It allows for the partial closure of a trial proceeding when a minor victim is testifying in the prosecution of a child's sex offense. The statute allows the court to exclude from the proceedings all persons who, in the opinion of the court, do not have a direct interest in the case except the media. Like the constitutional requirement, the default position of Section 115.11 is that the public may attend the proceedings. However, the statute gives the court discretion to exclude only those who have no direct interest in the case. Here, the trial court failed to meet that statutory or constitutional requirement. After defense counsel informed the trial court that Mr. Schoonover's family was present, Judge DeFanis barred them from the courtroom with a one-word exclamation, Out. Judge DeFanis did not make a finding that Mr. Schoonover's family members did not have a direct interest in this case. In People v. Revello, the appellate court considered a similar situation. The appellate court found that the trial court failed to make an express finding that Revello's family members did not have a direct interest in the case. Accordingly, the appellate court granted Revello a new trial holding that a defendant need not prove specific prejudice when the trial court excludes persons with a direct interest in the proceedings. This court should similarly find that Judge DeFanis violated Section 115.11 and therefore grant Mr. Schoonover a new trial. With regards to the direct interest, the default is that everyone gets to attend the proceedings. It was the responsibility of defense counsel and the spectators to make it known to the court their presence and their desire to attend the trial proceedings. So after defense counsel made the court aware, the trial court had a responsibility to find out whether they had a direct interest in the case. Judge DeFanis did not make this determination. Did defense counsel have any obligation to inform the court who the family members were and whether they were distant relatives or immediate family? Or was the responsibility all on the court? The statute does not require anything of defense counsel. It's primarily an issue of waiver and a lack of a complete record. Because in situations where defense counsel or the spectators say nothing, there's nothing indicating on the record that anyone was even trying to attend the proceedings. Here we have defense counsel expressing that there were people who were trying to attend the proceedings. And these are family members who are a subset of family members, generally have, in Reveilleau, for example, immediate family members are presumed to have a direct interest. In Reveilleau, you also had a specific objection. Yes. Where the defense pushed the court on notice. They have a specific objection. They're talking about specific family members. The court now is aware because the defendant has made him or her aware. And they go through the analysis. Or they failed to do so. Here, what objection was ever interposed by the defense counsel? The defense counsel, like Reveilleau, made the court aware that there were people interested. The counsel didn't state the specific names of the people, but he did make the court aware that there were people. Did he even verbalize an objection on the record? On the record, there's no indication that he verbally stated an objection. Did he ask the court to clarify its ruling? No, but the court acknowledged defense counsel's objection. That's my question. Do we really know whether there was ever even an objection, or was this simply a situation where a trial judge who's been doing these things for a long time knows that this is the type of thing that a defendant objects to, and he's noting the objection for the record? We don't even know that, do we? But based on the context of the entire proceedings, a bad section... Aren't the court's specific comments clear that it was noting defense counsel's objection, where the trial judge says, so I'm going to order that the courtroom be cleared with the exception of the media when ML testifies. I will note defense counsel's objection. Yes, sir. However, it was communicated by the defense attorney in court as to what it was that the defense counsel was disagreeing with, the trial court understood it to be an objection and identified it as such. Yes, Your Honor, and with the context of his first declaration that there were people that he wanted to be in the trial proceedings, take that in context with what Your Honor just said. It shows that that objection was directed, that the court noted was the Section 115.11 proceeding, closing it to Mr. Schoonover's family members. Based on the context of that whole back and forth, we can see that the court recognized that objection as an objection to Mr. Schoonover's family members being excluded from the courtroom. And further, in Benson, this court stated that the type of people that would be excluded in this kind of case would be spectators whose connection to the case is tenuous or whose presence similarly reflects just their curiosity about the proceedings. This group of people that is at issue here doesn't reflect that kind of situation. So the trial court should have been aware and recognized that it should further have questioned this group of people. So it's clear from the record that an objection was noted by the court and that the trial court erred in closing the courtroom off to Mr. Schoonover's family members. Mr. Schoonover requests that this court find that the trial court violated Section 115.11 and should grant Mr. Schoonover a new trial. I would also like to briefly address Argument 3A, specifically that Judge Stefanis abused his discretion when he expressed personal sentencing policy by stating that all child molesters cannot be good people or do good things. The court stated that the good deeds done by the child molesters are only done so that they can cover what they do in private with the child and that this was the nature of child molesters. Therefore, the court determined through his personal opinion that any good act done by Mr. Schoonover was at best disregarded or at worst considered an aggravating evidence. Worst, this was a blanket policy that would apply to all defendants who had committed a child sex crime and this class of offenders, in Judge Stefanis' view, were not capable of doing any good acts that could be considered mitigating. Now, in this case, family testified about Mr. Schoonover's character and multiple people, family, friends, and acquaintances wrote letters attesting to the good things Mr. Schoonover has done. However, the court disregarded all of these based on the type of offense that Mr. Schoonover was being sentenced with. The court failed to treat Mr. Schoonover as an individual and give him an individualized sentence. If the trial court can just state that child molesters cannot do good deeds, there's no purpose for a sentencing here. Now, the state argues that this would deter people from committing similar offenses. However, a deterrent message alone does not excuse that the statement is improper. For example, in Bolliard, the trial court stated that it does not give probation to defendants who committed crimes of sexual violence. Similarly, that message would deter individuals from committing sexual violence. However, that alone does not make the statement acceptable. Mr. Schoonover therefore asks that this court grant Mr. in the alternative, Mr. Schoonover a new sentencing hearing before a different judge. Counsel, even if we were to agree with you that the court violated 115-11, how is your point of prejudice? What's your argument there? The court in Revelo presumed prejudice just because this is the type of error which had constitutional implications, which you can't just presume prejudice because it's structural. Similarly, this court should adopt Revelo's reasoning. Further, since many of these cases came out, the Supreme Court decided pressly, which expands on the constitutional requirements. So by not following section 115-11, which is an exception to the constitutional requirement, the trial court then faces constitutional implications to its determination to close or even partially close the courtroom. So is your argument that it would be second-pronged plain error or structural error or both? It would be both. Both, okay. And the United Supreme Court has recognized this as one form of structural error. So if the constitutional implications of this are not met, if the trial court didn't do enough based on the constitutional, that would also be structural error. Thank you. Thank you, Your Honor. May it please the Court. Counsel. I was trying to flip through and see which U.S. Supreme Court cases held that this is structural error. I don't remember any Supreme Court case specifically so holding. I may be wrong, but I don't remember that, especially considering this Court's opinion in Benson. But first, as for the clearing the courtroom issue, this issue was not merely forfeited. It was also waived by counsel's affirmative acquiescence. He basically accepted the trial court's procedure in clearing the courtroom. Well, then why did the trial court say that defense counsel objected? That, I'm guessing he's considering the question beforehand an objection. I don't think there was any nonverbal objection at that time, because if you look at the record directly after that, he objects to a – But I guess what I'm saying is if the trial court said there was an objection, how can you have a waiver argument? Because if we look at the timeline, these were both – both of the discussions by the trial court were prior to they were actually clearing the courtroom. Winning actually clears the courtroom. The trial court clears the courtroom. The state mentions a few specific family members of ML that they're going to stay. And then the trial court states who else, meaning who else wants to stay, who else is eligible to stay. At that point, defendant and counsel are silent. This would be the perfect – and I would say they had a duty to – if there were family members even still there – again, they said there were family members there prior to opening remarks. This was right when ML was going to testify after opening remarks. If there are specific family members still there, he needs to raise that issue and specify which family members are there. And this is after Judge Funness's noted defendant's objection? Correct. What would compel a defense lawyer to do more after the record already establishes he's objected? Well – If the trial judge has already indicated on the record I've noted defense counsel's objection, wouldn't defense counsel then think I'd done what I needed to do? Well, if he wants to establish a proper record, he would at least need to specify – I mean, not every family member is required to stay under Section 115.11. It's only immediate family members. As far as the trial court knows – That's to establish prejudice, you're saying? Well, if we state – if we were still going to follow per se prejudice, which I would submit we shouldn't, but yes, that would be the violation of 115.11, that immediate family members of defendant, it's been held they have a direct interest in the case, therefore the procedures of 115.11 weren't followed. Here, we have – the only thing on record of any issue is simply a question by defense counsel. Defendant has family members here, are they barred? Now, it's true that the answer – it's a strange answer from the trial court. I mean, it could very well be – I can't remember what the context was. It could be the ending of a sentence before that, I don't know. But that on its own is not enough. At that point, there should have been a specific objection. And again, there was time in between when trial court noted an objection. This was before and after the opening remarks. There was time in between for the trial – for defense counsel to specifically state, I object, defendant's mom's here, defendant's brother's here, or whatever. There's simply not enough here to establish any immediate family members. And I would submit that the trial counsel had a duty to at least inform the trial court as to what status the family members were there. And in staying silent when he says, who else, that's affirmative acquiescence as far as I'm concerned. That's more than mere forfeiture. That's acceptance of the trial court's procedure. Did you have a question? I did. I just wanted to make sure. Is there any doubt – the record is clear that defense counsel informed the trial judge that there were family members present in the courtroom, correct? Yes. I think he said, are family members here, are they going to be barred? Yes. And it's clear that the trial court ordered everyone in the courtroom except for media and the victim's grandmother to exit the courtroom. That's a – particularly if you look at the record of that, they actually only say everyone's out except for media. In other words, the state held up its end of the bargain saying, hey, M.L.'s relatives, grandmother, I think mother and sister, they need to stay too. The state held up that end of the bargain, and as soon as that was done, the trial court says, okay, who else? Well, previously the defense attorney had indicated family members, and the trial court said out, right? Yes. Again, that's a gut reaction by the trial court, and prior to the actual clearing of the courtroom, I would say that the trial court caught its error in saying out, if it's a blanket out of the defendant's family members. They caught that error by saying who else wants to stay when they were actually clearing the courtroom. This is especially true directly after that. They even specifically inquire – the trial court specifically inquires as to the remaining people in the room what their relationship was to the case. The defense counsel had every opportunity to raise the issue, hey, this is defendant's mother. She should be allowed to stay. There's nothing in the record that shows there's an immediate family member. So that's why the waiver in this case is especially problematic is because the record is incomplete as to any specific immediate family member of defendant being in the courtroom. Does it make any difference that this was not a motion by the state brought pursuant to 115.11, but the trial court, sua sponte, clearing the courtroom? I don't think so. Was there any reference made by the court that it was clearing the courtroom pursuant to 115.11? Yes, they did that at the very beginning of the proceedings, before opening remarks. That's when the defense counsel questioned the trial court. And then directly after opening remarks is when they said they were planning on doing it again, and they note defendant's objection. And then later, actually prior to ML's testimony, is when he actually does go through clearing the courtroom. Always allowing, specifically excluding the media, and then specifically including who the state mentions are family members of ML. At that point, again, I would just submit that the defense counsel had a duty at that point to at least specify for the record which family members were there and to make a record for this court as to either he's abusing his discretion and not allowing them, or he is excluding cousins and aunts and uncles. The Williams case, cited in my brief, the third district case, states the well-settled principle that trial judges are presumed to follow the law. We presume that the judge allowed all those identified with a direct interest in the case to be present during SH's testimony. There, I think it was done in chambers even. Only people there were defendant, defense counsel, state's attorney, and I believe the victim's mother. That's the difference between this and Reveilleau. In Reveilleau, the defense counsel made a specific objection, not only objecting to the trial court's decision, but specifying which immediate family members were there. The Reveilleau court had a much clearer record as to not following the procedures of 115-11. Where I disagree with Reveilleau and where this court implicitly disagrees with Reveilleau is People v. Benson. There, Justice Stegman held that the Sixth Amendment to the U.S. Constitution was meant for weightier matters. Section 115-11 of the code does not conflict with that amendment. Because Section 115-11 permits only limited closure of trial court proceedings, that section does not violate or even implicate any state or federal constitutional provisions. In other words, 115-11 doesn't have anything to do with the Sixth Amendment right to a public trial. Because one, it's a limited closure. It's only during a child sex victim's testimony. Two, the media is specifically excluded. And three, people with direct interest are also specifically excluded. The point of the constitutional provision not even being implicated is that that's exactly what Reveilleau relies upon in establishing that there should be per se prejudice. Well, isn't it a fair statement to say it isn't implicated as long as that section is followed? Well, I didn't read Benson that way. Well, in terms of the factual underpinnings of Benson, there was compliance with the statute there, right? Yes. That's not the case here, as argued by the defendant. The defendant's position is that it was not complied with. However, I would submit that the degree of infraction of Section 115-11 would go towards whether prejudice is established or not. I don't think it's a per se prejudice simply because the provisions of 115-11 aren't followed. Especially in plain error analysis. The burden is on the defendant throughout plain error analysis. Had there been an objection, had there been a preservation of this issue in a post-trial motion, then this would be a different story. Here, it's the defendant's burden to prove not only – there was overwhelming evidence that first-pronged plain error is out of the question here. But it's the defendant's duty to prove that not only was there prejudice, but that this resulted in a fundamentally unfair trial. And here, simply because it's difficult is what Reveilleau decides that there must be presumed prejudice. And I would argue that that's bad logic. Simply because prejudice is difficult to establish does not mean that we should presume prejudice in all cases. I think it should mean the exact opposite. One example of prejudice maybe being a violation of 115-11 showing prejudice would be if even the media is excluded, or maybe even defendant or defense counsel is excluded, or something like that. That could be a very good argument for prejudice here. A vague question about defendant's family members simply is not enough to establish second-pronged plain error. And you indicated earlier you're unaware of any precedent that would suggest that improper closure of courtroom proceedings constitutes structural error. As far as the U.S. Supreme Court – I can't remember, and I didn't have time – these are pretty hefty briefs. I didn't have time to flip through counsel's briefs. So he may very well be right, but I don't remember any case specifically so whole. And there may be one U.S. Supreme Court case that kind of touches upon it, but I don't remember any Supreme Court case holding that – especially applying to our specific Illinois statute, 115-11. I would just urge this Court to follow Benson's logic there, that since this is only a limited closure, and especially in this case where the trial court seemed to properly apply 115-11, they only limited it to M.L.'s testimony, they specifically excluded the media, and they asked who else wants to stay. I would say that the trial court complied or at least did not abuse its discretion in clearing the courtroom. Well, that goes to your degree of noncompliance argument, I guess. But the problem is the court allowed the victim's family to stay in the press, but not the defendant's family. It's the defendant who's on trial. Again, they only allowed the victim's family after the state said, hey, can these people stay? I would think that the defense counsel would make a similar – So basically you're arguing it was defense counsel's duty to identify who the interested persons were and not the court's obligation to ascertain who those interested persons were. I would say on this factual pattern, yes. I don't think that the court had a duty to ask every single person in the courtroom what their relationship to the case was. They did do that after the remaining people were cleared out. The remaining people left. They did ask what about these people. But the record as it stands here, I think that the trial court at least did not commit plain error in clearing the courtroom, even assuming this argument had not waived. I think the other position argued was the sentencing argument, personal sentencing policy. Clearly these were just personal observations by the trial court. In fact, there's not even a policy they mentioned. They don't specifically say, hey, I give sexual predators the maximum or I don't give sexual predators or child molesters the minimum or anything like that. If you read the comments in context, it's clearly rejecting the mitigating evidence the defendant presented from the letters and defense counsel's argument that, hey, this guy's a good guy. The trial court was in the best position to evaluate the credibility of all the people present, but the point being that these were personal observations, as the Illinois Supreme Court said in Steppen, the fact that the sentencing judge added some personal observations before imposing the sentence, while not to be encouraged, is of no consequence. Here it's hard to even faction what the personal sentencing policy would be based on the trial court's comments. It instead was a rejection of the defendant's mitigating evidence, and that was no abuse of discretion. And if the court has no more questions, thank the court. I see no other questions. Thank you, Mr. O'Neill. Mr. Matthews? With regards to it being structural error of the right to a public right or the right to a public trial, Grebelo says the holding is bolstered by the practice of presuming prejudice when the constitutional guarantee of a public trial is violated. So that kind of assumes that it's a structural error. Similarly, Pressley, where the United States Supreme Court, again, didn't analyze the prejudice, which is typically what the court does in cases where there's structural error. I don't believe it specifically stated the word structural error, but other Supreme Court cases, which I have, to be honest, cited in my brief, do state similarly. And I believe, Justice Harris, you asked whether the court decided the sua sponte mattered, and I think it does, because this is not an issue that defense counsel is trying to convince the court of. This is an issue that the judge already made his decision before going in that this was going to be a closed court. This is not defense counsel arguing with the state and trying to convince the court of something. The decision was already made, and defense counsel was trying to make a clarification, make an objection to that. It would be, and this is right before trial, for defense counsel to continuously question the trial court's decision there, it would just elicit the ire of the court, and it would not be fair to expect that defense counsel continue to question the trial court's ruling. But what did he do to get an elaboration of the trial court's ruling at all? He asked who specifically was, he asked if these group of people were in that list of exclusions, because he assumed people who had a direct interest, like family members, shouldn't be excluded. And then there's no follow-up? The court set out. There's no follow-up by the defense counsel? I think that the trial court setting out makes it so that defense counsel has no obligation to make a better record to establish clearly what his objection is, who the people are that are being excluded. Before trial to continuously have, after the, well I haven't heard it yet, so I wouldn't call it continuously. It hasn't happened yet, so this next time would be the first time. The, I mean, the court did note that objection. I mean, it could have been nonverbal. Trial counsel could have stood up, and it could have been made aware to the court. What about the fact that immediately before they're going to close the court, the defense does reiterate his standing objection to the 11510 evidence, but doesn't choose to say anything about 11511? I mean, that's because 11510 is a pretrial decision, and defense counsel was noting it for the record. And I think this 11511 was essentially sprung upon the defense counsel right before trial by the court's sua sponte decision. There was no notice for counsel to even prepare for that question. You don't think criminal defense lawyers figure they're going to have to deal with 11511 in a sex case? They do, but, and the defense counsel tried to do his best to make the court aware that there were people with a direct interest. If the court has no further questions, I would ask that Mr. Sunover be granted a new trial. Thank you, Mr. Mathew. Gentlemen, thank you very much. The court wants to let you know how much we appreciate the fact that you were willing to move up your schedules for us, to accommodate us, and the fact that you worked over your lunch hour to do so. So, thank you very much.